IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GLENDA RILEY                                                            PLAINTIFF

V.                      CASE NO.: 1:12CV00103 BD

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration[1]                                      DEFENDANT

## ORDER AFFIRMING COMMISSIONER

Glenda Riley sought judicial review of the denial of her application for supplemental security income.[2] Ms. Riley based her disability claim on depression, anxiety, a crushed heel, and a broken ankle. *Id*. at pp. 76, 142.

Ms. Riley was forty-nine years old and was living with her boyfriend at the time of the hearing. *Id*. at pp. 52-53. She had passed her general educational development test, but had not worked in the past fifteen years due to depression and anxiety. *Id*. at pp. 56-57.

At the time of her hearing, she complained of problems with her foot and ankle, depression, and anxiety. *Id*. at p. 57. She had a history of alcohol abuse but testified she

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted for Michael J. Astrue pursuant to Fed.R.Civ.P. 25(d).

[2]Ms. Riley's prior disability applications were denied on November 29, 2009, March 4, 2005, and March 25, 1998. SSA record at pp. 138-39.

1

only drinks a little wine every once in a while. *Id*. at 55. She was last treated for her mental problems in 2004 and stopped taking medication in 2005 or 2006. *Id*. at pp. 58-59.

**The Commissioner's Decision**

After considering Ms. Riley's application, the Commissioner's ALJ determined that she had severe impairments – history of alcohol abuse, anxiety related disorder, mood disorders, fracture of non-extremity, and left calcaneal fracture – but that she had the residual functional capacity ("RFC") to perform light work with only occasional climbing, crouching, kneeling, stooping and crawling; she cannot climb ladders, work on scaffolding, or work at unrestricted heights; and she would experience mild to moderate pain symptoms.  Further, he found that Ms. Riley was limited to unskilled jobs where she can understand, follow and remember concrete instructions, and contact with supervisors, co-workers and the public is superficial. *Id*. at pp. 13-21.  The ALJ alternatively found that Ms. Riley had the residual functional capacity to perform sedentary work with the additional limitations set forth above. *Id*. at p. 15.  Based on the testimony of a vocational expert, the ALJ concluded that Ms. Riley could perform work at the light exertional level as a routing clerk or packing line worker and at the sedentary level as an order or rating clerk, and so she was not disabled under the Social Security Act. *Id*. at p. 23.

After the Commissioner's Appeals Council denied Ms. Riley's request for review, the ALJ's decision became a final decision for judicial review. (Tr. 1-5)  Ms. Riley filed

this case to challenge the ALJ's decision. (Docket entry #2) In reviewing the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[3]

**Listed Impairment**

In her first and second points for appeal, Ms. Riley complains that the ALJ erred by failing to find that she met an impairment listed in 20 C.F.R., part 404, subpart P, appendix 1. To establish that an impairment meets or equals a listing, a claimant must establish all of the listing's specified criteria. See *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530–31, 110 S.Ct. 885 (1990)). If an impairment manifests only some of these criteria, no matter how severe, it does not qualify as a listed impairment. *Id*.

Here, Ms. Riley argues that because of her alleged mental impairments, she meets the listing criteria for 12.04, affective disorders; 12.06, anxiety related disorders; 12.07, somatoform disorders; and 12.08 for personality disorders. (#12 at pp. 12-16) In order to establish that she met any of these listings, she would have to establish the criteria set out

---

[3] See 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

in both the paragraphs A and B, or in order to meet listing 12.04 or 12.06 she could establish that she met all of the criteria in paragraph C. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A), 12.04(C), and 12.06(C).

Ms. Riley cannot meet the criteria of any of these listings, because she has not pointed to evidence in the record showing marked limitations in at least two of the four functional categories (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation) as required by paragraph B of listings 12.04, 12.06, 12.07, and 12.08. *Id*. at p. 14.

As the ALJ notes, Ms. Riley had only mild limitation in activities of daily living. *Id*. at pp. 18, 150-53, 195, 203. Contrary to her testimony at the hearing that she had very minimal activities of daily living, Ms. Riley stated in her application documents that she was able to handle her own personal care, watch television, clean house a little, prepare easy meals, and shop. *Id*. at pp. 58-60, 150-53. As the ALJ noted, Ms. Riley reported similar activities to George M. DeRoeck, Psy.D. who performed a consulting examination of Ms. Riley on a prior application for benefits, and to Samuel B. Hester Ph.D. who performed a consulting examination of Ms. Riley on the application that resulted in this appeal. *Id*. at pp. 18, 195, 203.

The ALJ also noted that Ms. Riley had only moderate difficulties in maintaining social functioning. *Id*. at pp. 14, 53, 63, 196, 203. She had only moderate difficulties

with maintaining concentration, persistence, or pace. *Id*. at pp. 14, 18, 196, 203-04.  And she had no episodes of decompensation.[4]  *Id*. at pp. 14, 227, 231.

Further, in order to meet the criteria set forth in 12.04(C)[5] or 12.06(C),[6] Ms. Riley would have to show a medically documented disorder lasting at least two years with symptoms or signs currently attenuated by medication or psychosocial support or a complete inability to function outside of her home.  Ms. Riley did not establish that her symptoms or signs were being weakened by medication or psychosocial support, because she had not sought treatment for her alleged mental impairments since applying for benefits in January, 2010.  *Id*. at p. 58, 147.  The record indicates that Ms. Riley did not

---

[4]In her brief, Ms. Riley claims she had an episode of decompensation at work when she could not get along with co-workers and was fired for fighting.  The Court has reviewed the record and is unable to find evidence of these events in the record at the pages reference in Ms. Riley's brief. (#12 at p. 15)  The record indicates she had one job which she quit because of her condition.  *Id*. at p. 142.

[5]Paragraph C of listing 12.04 provides that the claimant must establish a, "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  1. Repeated episodes of decompensation, each of extended duration; or  2. A residual disease process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or  3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with indication of continued need for such arrangement."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(C)

[6]Paragraph C of listing 12.06 provides that the claimant must establish an anxiety disorder that has resulted in a "complete inability to function independently outside the area of one's home."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.06(C)

seek mental health treatment after she was treated at Church Health Clinic in 2005 or 2006. *Id*. at p. 58. Additionally, Ms. Riley had not been on any medication since applying for benefits.[7] *Id.*

Moreover, Ms. Riley has not established an inability to function outside a highly supportive living arrangement.[8] In spite of Ms. Riley's testimony that she doesn't want to leave the house or get out of bed, Ms. Riley testified that she lives with her boyfriend and regularly sees her daughter. *Id*. at p. 53. In her application materials she testified that she is able to make the bed, clean a little, shop, pay bills, and take care of her own personal needs. *Id*. at pp. 54, 58, 203. Ms. Riley told Dr. DeRoeck during her consulting evaluation that she could perform sedentary work "if it wasn't too stressful." *Id*. at p. 196.

Ms. Riley also maintains that the ALJ should have found that she met Listings 1.02 for major dysfunction of a joint characterized by gross anatomical deformity, chronic joint pain, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint with involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate. 20 C.F.R. Pt.

---

[7]Ms. Riley testified that she quit taking medication because she moved. *Id*. at pp. 59-60. There is, however, no evidence in the record indicating that she applied for but was denied services based on an inability to pay.

[8]A "highly supportive living arrangement" may be "a hospital, halfway house, board and care facility, or other environment that provides similar structure." See 20 C.F.R. pt. 404, subpt. P., App. 1 § 12.00.F. "Highly structured and supportive settings may also be found in [the claimant's] home." *Id.*

404, Subpt. P, App. 1, 1.02. (#12 at pp. 17-19) Ms. Riley, however, offers no evidence to support her suggestion that she meets the meets the criteria of listing 1.02. She claims to suffer from pain in her foot following a left calcaneus fracture in November, 2007. *Id*. at pp. 17, 190. Brian G. Dickson, M.D., who treated Ms. Riley, noted that an x-ray taken on December 6, 2007, showed that the fracture had healed and on examination Ms. Riley was noted to be able to walk without a crutch or boot. *Id*. at 189. Subsequent treatment records do not indicate that Ms. Riley had any difficulty ambulating. *Id*. at 191-298.

Ms. Riley also maintains the ALJ should have found that she met listing 1.04 for disorders of the spine and listing 11.02 for epilepsy. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04, 11.02. (#12 at pp. 17-19) Again, Ms. Riley does not offer any evidence to support her claims to meet these listings.

The Court has reviewed the entire record and the criteria for each listing Ms. Riley claims to have met, as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02, 1.04, 11.02, 12.04, 12.06, 12.07, and 12.08. The ALJ correctly determined that Ms. Riley failed to meet her burden of showing that any of her impairments met or equaled all of the criteria set forth in these listings. See *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (summarily rejecting conclusory assertion that ALJ did not consider whether appellant met certain listings, where no analysis of law or facts was provided); see also 20 C.F.R. §§ 404.1525(d), 416.925(d) (2011); *Harris v. Barnhart*, 356 F.3d 926, 929 (8th

Cir. 2004) (diagnoses are not sufficient, by themselves, to demonstrate that a condition meets the requisite medical criteria).

**Residual Functional Capacity**

Finally, Ms. Riley complains that the ALJ erred by finding she had the residual functional capacity ("RFC") to perform a limited range of light and sedentary work. The Commissioner responds that the ALJ's RFC determination was supported by substantial evidence.

The ALJ must consider all the evidence in the record when determining RFC, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004)(citations omitted). If, in light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen* v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 (1987).

Here, there is substantial evidence to support the ALJ's RFC determination. On March 31, 2010, state agency physician, Winston Brown, M.D. reviewed Ms. Riley's medical records and found she had depressive disorder NOS and alcohol dependence in sustained partial remission. Dr. Brown found that Ms. Riley's depression caused moderate limitation in maintaining social functioning and concentration, persistence and pace, but only mild restriction in activities of daily living and no episodes of

decompensation. He concluded that she could perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete – unskilled work. *Id*. at pp. 238-39. Jerry R. Henderson, Ph.D. reviewed Ms. Riley's records and affirmed Dr. Brown's assessment on May 12, 2010. *Id*. at 231.

Dr. Hester, who completed a consultative mental examination of Ms. Riley, concluded that Ms. Riley was able to communicate and interact in a socially adequate manner; cope with the typical mental demands of basic work-like tasks; attend and sustain concentration on basic tasks; and complete tasks within an acceptable time frame. *Id*. pp. 203-04. Dr. Hester's report is substantial evidence supporting the ALJ's conclusion that Ms. Riley could perform unskilled work.

The record also supports the ALJ's RFC finding that Ms. Riley could perform work at the light or sedentary level with a few additional limitations. Jerry Mann, M.D. reviewed Ms. Riley's medical records and completed a physical residual functional capacity assessment. *Id*. at pp. 245-252. He concluded Ms. Riley had the residual functional capacity to perform light work. *Id*. at p. 246. Ronald Crow, D.O. reviewed Dr. Mann's assessment and affirmed it. *Id*. at p. 240. Joseph Patterson, M.D. who performed a consultative physical examination of Ms. Riley on April 1, 2010, found that Ms. Riley had no muscle atrophy, could stand and walk without assistive devices, could heel and toe walk. *Id*. at p. 211. He diagnosed some osteopenia with sclerosing at

9

superior aspect of the calcaneous but concluded that Ms. Riley had only mild limitations in crouching and kneeling. *Id*.

The ALJ considered these opinions, and concluded that Ms. Riley retained the RFC for light or sedentary work that is unskilled and involves only occasional climbing, crouching, kneeling, stooping and crawling but does not involve climbing ladders or scaffolding, or work at unrestricted heights. *Id*. at p. 14. A reasonable mind would accept the evidence in the record as adequate to support the ALJ's RFC determination. See *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

**Conclusion**

Substantial evidence supported the ALJ's decision denying Ms. Riley's application. The ALJ made no legal error. For these reasons, the court DENIES Ms. Riley's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 4th day of October, 2013.

_____
UNITED STATES MAGISTRATE JUDGE